UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DOMINIQUE JACKSON                    CASE NO.  6:20-CV-01413 SEC P

VERSUS                               JUDGE ROBERT R. SUMMERHAYS

DARRELL VANNOY, ET AL                MAGISTRATE JUDGE HANNA

REPORT AND RECOMMENDATION

Pro se petitioner Dominque Jackson, proceeding in forma pauperis, filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on October 29, 2020.  Rec. Doc. 1.  Petitioner attacks his January 29, 2015 conviction for second degree murder and the life sentence imposed by the 27th Judicial District Court, St. Landry Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

I.      Background

Dominque Jackson was indicted and charged with one count of first-degree murder of two-year-old Derrion Sam.  Rec. Doc. 1-1, p. 9.  He pled not guilty. Following a jury trial on January 28-29, 2015, he was found guilty of one count of second-degree murder and, on March 5, 2015, sentenced to a term of life imprisonment.

Petitioner timely filed a direct appeal in the Third Circuit Court of Appeals, alleging insufficient evidence to convict.  Rec. Doc. 1-2, pp. 4-16.  On November 4, 2015, the Third Circuit affirmed the conviction.  *Id*. at p. 18-47; *State v. Jackson,* 15-393 (La. App. 3 Cir. 11/4/15); 179 So.3d 753.

Petitioner applied for a writ of certiorari in the Louisiana Supreme Court on November 24, 2015 (*id*. at pp. 48-66), which was denied May 2, 2016.  *Id*. at p. 68; *State v. Jackson*, 2015-2191 (La. 5/2/16), 206 So. 3d 877.

Petitioner did not apply for certiorari in the United States Supreme Court. Rec. Doc. 1, p.4, ¶ 9(h)).

On November 25, 2016, Jackson filed an application for post-conviction relief and request for supporting documentation in the trial court, raising the following issues: (1) prosecutorial misconduct; (2a) ineffective assistance of counsel in failing to object to prosecutorial misconduct; (2b) ineffective assistance of counsel in failing to impeach witness testimony and request a limiting instruction; and (2c) ineffective assistance of counsel in failing to retain an expert.  Rec. Doc. 1-2, p. 82- 1-3, p. 18. On January 10, 2017, his application and requests were denied.  Rec. Doc. 1-3, pp. 19-20.

On March 16, 2017, Petitioner sought review in the Third Circuit.  *Id*. at pp. 21-32.  While his application was pending in the Third Circuit, Jackson filed a Petition for Habeas Corpus in this Court, admitting that he had not exhausted

available state court remedies with respect to all issues presented.  He asked the Court to stay the proceedings so that he might complete the exhaustion of state court remedies. Following Judge Whitehurst's recommendation to dismiss the suit without prejudice, Jackson filed a Motion to Voluntarily Dismiss, which was granted by Judge Doherty on August 10, 2017.  *Jackson v. Vannoy*, 2017-915 (W.D. La. 8/10/17).

Meanwhile, on June 20, 2017, the Third Circuit ruled on Petitioner's writ, denying it in part, granting it in part and making it peremptory in part.  Rec. Doc. 1-3, pp. 45-47.  After resolving procedural issues regarding requests for certain documentation, the trial court ultimately denied his application for post-conviction relief on March 26, 2018.  Rec. Doc. 1-4, pp. 21-25.  Petitioner sought writs in the Third Circuit on May 10, 2018 *(id*. at pp. 31-61), which that court denied on October 7, 2019 (*id*. at pp. 62-63).  The Supreme Court denied Petitioner's request for review on July 31, 2020.  *Id*. at pp. 82-83; *State v. Jackson*, 2019-1807 (La. 2020); 300 So.3d 388.

The instant petition was filed on October 29, 2020, raising the following claims: (1) insufficient evidence; (2) prosecutorial misconduct; (3) ineffective assistance of counsel in failing to object to prosecutorial misconduct; (4) ineffective assistance of counsel in failing to impeach witness testimony and request a limiting

instruction; and (5) ineffective assistance of counsel in failing to retain an expert. Rec. Doc. 1.

## II.   Law and Analysis

### a.   Standard of Review - 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

To overcome AEDPA's relitigation bar, a state prisoner must shoehorn his claim into one of its narrow exceptions. *Langley v. Prince*, 962 F.3d 145, 155 (5th Cir. 2019). As relevant here, he must show the state court's adjudication of the claim "resulted in a decision that was [1] contrary to, or [2] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.*; 28 U.S.C. § 2254(d)(1).

The first exception to the relitigation bar—the "contrary to" prong—is generally regarded as the narrower of the two. *Id.* A state-court decision is "contrary to" clearly established federal law only if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if" it resolves "a case

differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. (*citing Terry Williams v. Taylor*, 529 U.S. 362, 413 (2000).

The other exception to § 2254(d)(1)'s relitigation bar is the "unreasonable application" prong, which is almost equally unforgiving. *Id*. at 156. The Supreme Court has repeatedly held that it is not enough to show the state court was wrong. *Id.; see also*, *Renico v. Lett*, 559 U.S. 766, 773 (2010) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." (quotation omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). Rather, the relitigation bar forecloses relief unless the prisoner can show the state court was so wrong that the error was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id. (citing Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam) (quotation omitted). In other words, the unreasonable-application exception asks whether it is "beyond the realm of possibility that a fairminded jurist could" agree with the state court. *Id.* (*citing Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam); see *also Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (per curiam) (asking "whether it is possible fairminded jurists could disagree

5

that those arguments or theories are inconsistent with the holding in a prior decision of this Court" (quotation omitted)).

Overcoming AEDPA's relitigation bar is necessary, but not sufficient, to win habeas relief. Even after overcoming the bar, the prisoner still must "show, on de novo review, that [he is] 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Id. (citing Salts v. Epps*, 676 F.3d 468, 480 (5th Cir. 2012) (quoting 28 U.S.C. § 2254(a)); *see also Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("[A] habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review [under] § 2254(a).").

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## b. Claims

### i. Claim 1 – Insufficiency of the Evidence

Plaintiff claims that the evidence at trial was insufficient to support his conviction.   Specifically, he argues that the evidence the jury relied upon to convict him was unreliable and "the verdict of guilt did not exclude another reasonable hypothesis of innocence – that the injury and death of D.S. occurred while under the mother's care."  Doc. 1, p. 6.

*Jackson v. Virginia*, 99 S. Ct. 2781 (1979), provides the appropriate United States Supreme Court standard for consideration of a claim of insufficient evidence. Under *Jackson*, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Id*. at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). Thus, to determine whether the commission of a crime is adequately supported by the record, the Court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U. S. at 324 n. 16).

In *Young v. Guste*, 849 F.2d 970 (1988), the Fifth Circuit noted that a federal habeas court's sufficiency of the evidence analysis is restricted to "review of the record evidence adduced at trial." *Young*, 849 F.2d at 972. In *Coleman v. Johnson*, 132 S.Ct. 2060 (2012), the United States Supreme Court elaborated on claims made under *Jackson v. Virginia*:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 132 S.Ct. 2, 4 (2011) (per curiam). And second, on habeas

review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'' *Ibid*. (quoting *Renico v. Lett*, 130 S.Ct. 1855, 1862, (2010)).

132 S.Ct. at 2062.  Thus, the standard to be applied by this Court when conducting a sufficiency of evidence analysis on federal habeas review is in fact "twice-deferential." *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012).

The sufficiency of the evidence analysis employed by Louisiana courts is the same one used by federal courts, *Jackson v. Virginia, supra*.; *State v. Bishop*, 835 So.2d 434, 437 (La. 2003).  Louisiana's Third Circuit Court of Appeal set forth the proper state and federal court analysis of a sufficiency of the evidence claim in *State v. Lambert*, 720 So.2d 724 (La. App. 3 Cir. 1998) where it stated:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307(1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. See *King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

720 So.2d at 726-27

Where a federal habeas petition claims that the state court trial evidence is insufficient for a conviction, the "proper standard of review is whether any rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Bujol v. Cain*, 713 F.2d 112, 114 (5th Cir. 1983), citing *Jackson*.  "The *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) citing *Herrera v. Collins*, 113 S. Ct. 853, 861 (1993).   The federal habeas court must evaluate a sufficiency of the evidence challenge "with explicit reference" to the substantive state law elements of the criminal offense and should "give great weight to the state court's determination." *Foy v. Donnelly*, 959 F.2d 1307, 1313-14 (5th Cir. 1992), quoting *Jackson v. Virginia*, 443 U.S. at 323 n. 16; *Gibson v. Collins*, 947 F.2d 780, 782, 786 (5th Cir. 1991); *Poretto v. Stalder*, 834 F.2d 461, 467 (5th Cir. 1987).

Petitioner was convicted based on circumstantial evidence, thus, under *Jackson*, the evidence admitted at trial must clearly and strongly indicate that the Defendant was the perpetrator.  *See State v. Jackson*, 179 So.3d at 770.

The following timeline is based upon the testimony and medical records admitted into evidence at trial and was relied upon by the Third Circuit:

9

**Summer 2011** . . . . Defendant and Ms. Hunt began dating and living together on and off.

**August 5, 2011** . . . . Derrion was brought to the hospital. He complained of stomach and rib pain. Ms. Hunt gave a history of Derrion being accidentally hit by a swing while in the care of Defendant. According to the medical records and testimony of Dr. Howes, the chest x-ray did not show broken ribs.

**October 7, 2011** . . . . Derrion was brought to the hospital for a burn to his right hand (2nd degree burn) which happened on October 4, 2011. History from mother said it was a hot grease burn. The chest x-ray did not show any broken ribs.

**November 7 to December 12, 2011** . . . . Dr. Tape testified that Derrion's rib fractures occurred from one to six weeks from the date of his death.

**December 8, 2011** . . . . Ms. Sam testified that Derrion had a bruise on his forehead and scratches on his face. Derrion said that Defendant hit him, but Ms. Hunt testified that Defendant said Derrion hit his head on the wall.

[Pg 24] **December 18, 2011**:

**Morning** . . . . According to Ms. Hunt, Defendant arrives at home.

**11:42 a.m.** . . . . According to Dr. Tape and the autopsy report, the best estimate of when the injury occurred to the duodenum (twenty-four hours before Derrion was pronounced dead at 11:42 a.m.). Both Defendant and Ms. Hunt could have been present.

10

**3:00 or 4:00 p.m.** . . . . According to Ms. Hunt, she goes to work.

**4:30 p.m.** . . . . According to Defendant's mother, she dropped off Defendant at Ms. Hunt's home.

**10:20 p.m.** . . . . Ms. Hunt returns to her home.

**December 19, 2011**:

**1:42 a.m.** . . . . Dr. Tape admitted the injury could have occurred this late (ten hours before Derrion was pronounced dead at 11:42 a.m.). Both Defendant and Ms. Hunt were with Derrion.

**1:42 a.m. to 3:42 a.m.** . . . . According to Dr. Fruge, the earliest the injury occurred (eight to ten hours before Derrion was pronounced dead at 11:42 a.m.). Both Defendant and Ms. Hunt were with Derrion.

**5:42 a.m. to 6:42 a.m.** . . . . According to Dr. Fruge, the best estimate of when the injury occurred (five to six hours before [Pg 25] Derrion was pronounced dead at 11:42 a.m.). Both Defendant and Ms. Hunt were with Derrion.

**5:04 a.m. to 9:04 a.m.** . . . . Dr. Tape estimates Derrion died based upon his body temperature taken upon arrival at the hospital, 11:04 a.m. (two to five hours before it was taken).

**9:00 a.m.** . . . . Defendant leaves Ms. Hunt's home.

**9:00 a.m. to 11:00 a.m.** . . . . Ms. Hunt and Tiffany testified Derrion was still responsive.

**11:04 a.m.** . . . . Ms. Hunt arrives at the hospital with Derrion, DOA (dead on arrival), according to the medical records. Derrion's body temperature is 93.3 degrees Fahrenheit.

**11:42 a.m.** . . . Derrion is pronounced dead.

179 So.3d at 768.  The Third Circuit concluded that according to the unrebutted testimony of the experts, the timeline showed that Jackson was present during all the times when the injury likely occurred and, although the evidence indicated that Ms. Hunt was more than likely present when the trauma occurred, no evidence was presented to prove Ms. Hunt committed the abuse. Therefore, the appellate court found that the jury obviously and reasonably rejected any hypothesis of innocence based on Ms. Hunt having committed the crime. *Id*.  In addition to factual evidence concerning the death of the child, the State presented unrebutted testimony that on at least three other occasions, the child was injured while in the care of petitioner. *Id*. at p. 770.

When this Court reviews that decision through the additional deference due the state court's decision under Section 2254(d), habeas relief is not permitted.  Even if a jury could have interpreted the evidence in the fashion that Petitioner suggests, his jury made a reasonable decision that the evidence instead proved that Petitioner was guilty as charged. The state court's review of the jury's verdict was based on a

reasonable assessment of the evidence and application of *Jackson*, so habeas relief is not permitted.

### ii. Claim 2 – Prosecutorial Misconduct

Next, Petitioner alleges that the prosecutor solicited false testimony from Ms. Hunt regarding the time of the victim's injuries and time of death. Petitioner further alleges that supporting experts, Dr. Tape and Dr. Fruge, testified that the victim died one to two hours after obtaining his injuries, which according to Petitioner would have been in the timeframe that the victim was in Ms. Hunt's care. However, the state contends that the petitioner offers no valid proof to support his contentions.

"Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). Actions and statements of a prosecutor may violate due process in two ways. "They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)). Federal courts apply "a two-step analysis to charges of prosecutorial misconduct." *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002). The courts first decide whether the prosecutor's actions were improper and, if so, they then determine whether the actions "prejudiced the defendant's substantive rights." *Id.*

When a petitioner asserts a generic due process violation, and it is determined that the prosecutor's actions were improper, the Court asks whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id*. (quoting *Donnelly* 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted).

In this case, Petitioner has failed to show that the prosecution acted in an improper manner, much less that his trial was rendered fundamentally unfair by any improper actions.  As the government argues, Petitioner cannot show that Latricia Hunt's testimony was perjured.  Further, even if Latricia Hunt did perjure herself, Petitioner offers no evidence that the prosecutor was aware of the perjury to support his claim for prosecutorial misconduct. In a failed attempt to support his claim that Hunt's testimony was perjured, the government argues, and the Court agrees, that

Petitioner misquotes the testimony of the experts. Dr. Tape did not testify that the victim died within a period of one to two hours from sustaining the injuries that caused his death.  The Third Circuit addressed this issue on appeal, finding that, "according to the unrebutted testimony of the experts, the timeline shows that Defendant was present during all the times when the injury likely occurred." Rec. Doc. 15-5, p. 60.

The Court agrees with the government's assertion that Petitioner presented no evidence that Latricia Hunt perjured herself.  He presented no evidence that the prosecutor knowingly presented perjured testimony, nor can he show that the allegedly perjured testimony was both material and that but for the perjured testimony, petitioner would not have been convicted. As the appellate and trial court noted, that even discrediting the testimony of Ms. Hunt, there is still sufficient evidence that the defendant was present at all times when the injury likely occurred. Accordingly, this claim must fail.

### ii.  Claims 3, 4, 5 – Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and

(2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id*. at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id*. Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (*quoting Strickland*, 104 S.Ct. at 2065) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055-56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (*quoting Cullen v. Pinholster*, 563 U.S. 170, (2011)). "Both of [*Strickland's*] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566-67 (5th Cir. 2014).

     **a.**     **Trial Counsel was ineffective in failing to object to prosecutorial misconduct when the prosecutor solicited**

16

**allegedly false testimony from Ms. Hunt regarding the time of the victim's injuries.**

"[C]ounsel is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). The government argues, and the Court agrees, that Petitioner has offered no evidence that Latricia Hunt perjured herself. Further, he has presented no evidence that the prosecutor knowingly presented perjured testimony to support his allegation of prosecutorial misconduct. Therefore, petitioner cannot meet his burden to show counsel's performance was deficient or that he was prejudiced by counsel's failure to object, or that counsel's objection would have been sustained.

**b.   Trial counsel was ineffective in failing to impeach the testimony of Ms. Hunt and request a limiting instruction.**

Petitioner argues that counsel was ineffective for failing to impeach Ms. Hunt and asserts that a particular line of questioning could have been offered concerning both the credibility of Ms. Hunt and her alleged culpability in causing the injuries to the victim.   Because decisions regarding cross-examination are strategic, they usually "will not support an ineffective assistance claim." *United States v. Bernard,* 762 F.3d 467, 472 (5th Cir. 2014) (citing *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002)).  The impeachment of a witness, and the extent to which such witness can be impeached, is a strategic choice well within the broad discretion of trial counsel.  *Dunham*, 313 F.3d at 732.

The record reveals that Petitioner's attorney thoroughly cross-examined Latricia Hunt at trial.  Rec. Doc. 15-3, p. 237- 15-4, p. 8.  In denying Petitioner's claim, the state court again noted that the petitioner incorrectly characterized the testimony of Dr. Tape. The trial court ruled that based on the other evidence at trial, even if the defendant could prove that defense counsel failed to object or effectively impeach the testimony of Ms. Hunt or to take an instruction to limit her testimony, the petitioner would not meet the burden of proving that the deficiency prejudiced the defendant, such that he was deprived a fair trial. Further, the trial court found that even if the testimony of Ms. Hunt regarding the time of the victim's injuries and time of death is discredited, there is still adequate evidence to convict the defendant.

### c.    Trial counsel was ineffective in failing to retain an expert.

As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (emphasis added; citations, quotation marks, and brackets omitted); accord *Day v. Quarterman*, 566 F.3d 527,

538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."). The Fifth Circuit has "required this showing for claims regarding uncalled lay and expert witnesses alike." *Id.*, at 538 (citing *Evans v. Cockrell*, 285 F.3d 370, 377-78 (5th Cir. 2002) (emphasis added). The Fifth Circuit has "clarified that the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'" *Hooks v. Thaler*, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting *Woodfox*, 609 F.3d at 808). Further, there must be a "'reasonable probability' that the uncalled witnesses would have made [a] difference to the result." *Alexander v. McCotter*, 775 F.2d 595, 603 (5th Cir. 1985) (citation omitted).

Petitioner has not met the foregoing requirements necessary to successfully assert such claims.  Petitioner does not state the names of any expert witnesses, nor does he state their availability and willingness to testify, or that their testimony would have been favorable to a particular defense. The government argues, and the Court agrees, that Petitioner offers only self-serving, speculative and conclusory allegations that an expert witness in forensic pathology would have in fact testified

and would have done so in a matter consistent with his version of the facts. Therefore, he has failed to meet his burden of proof with respect to this claim.

### III. Conclusion and Recommendation

For the foregoing reasons,

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

In Chambers, Lafayette, Louisiana October 8, 2021.

**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**